44 So.3d 725 (2010)
STATE of Louisiana
v.
Adam J. BLAZIO.
No. 09-KA-851.
Court of Appeal of Louisiana, Fifth Circuit.
June 29, 2010.
*726 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for the Defendant/Appellant.
Adam Blazio Docet, In Proper Person, Jackson, LA, Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, WALTER J. ROTHSCHILD, and JUDE G. GRAVOIS.
GRAVOIS, Judge.
The defendant, Adam J. Blazio, appeals his conviction for possession of alprazolam, a violation of LSA-R.S. 40:969(C). On appeal, the defendant argues that the evidence was insufficient to convict, his sentence was excessive, and he was denied due process and a fair trial. The defendant further seeks an errors patent review.[1]
After thorough consideration of the issues, for the following reasons, we affirm the defendant's conviction and sentence.

PROCEDURAL HISTORY
On April 13, 2005, the Jefferson Parish District Attorney's Office filed a bill of information charging the defendant, Adam J. Blazio, with possession of alprazolam, a violation of LSA-R.S. 40:969(C). At his arraignment, the defendant pled not guilty. *727 The defendant filed a motion to suppress the evidence, which defense counsel subsequently waived by proceeding to trial. A jury found the defendant guilty as charged. Subsequently, the defense's motions for a new trial and an arrest of judgment were denied. The trial court sentenced the defendant to five years at hard labor with credit for time served. The defendant's first motion for reconsideration of sentence was denied. Subsequently, the defendant filed a second motion for reconsideration of sentence, which was heard on October 18, 2007.[2] The defendant was later granted this out-of-time appeal.

FACTS
At the beginning of the trial, the State stipulated and the defense agreed that Officer Kelly Day, if called to the stand, would have testified that:
[O]n or about the 6th day of April 2005, while on routine patrol at approximately 3:58 in the morning in the area of ... 5808 Cedar Creek, she had the occasion to stop this defendant, who she would, in fact, identify as the person she had stopped. She performed a valid pat down search of him at that time, and she located in his possession, one bottle of pills. The pills were then, through chain of custody, which we're also stipulating to, were sent to the Sheriffs Office for analysis, and they were analyzed by our expert chemist, Thomas Angelica, who, I'm offering once again, to stipulate that number one, he's an expert; and two, he performed the analysis, and that he, in fact, created a Crime Lab report of his findings.
Thereafter, the State offered into evidence without objection "State Number 1, which is the Lab Report of the chemist showing that the seized drugs ... are, in fact, Alprazolam; State Exhibit Number 2, which are the drugs and the bottle seized from this defendant at the time of the stop by Officer Day[.]" In addition, the State offered, "for record purposes only, the police report of [Officer] Day, whichto the facts as [defense counsel] and [the State] have, in fact, stipulated. It's offered for record [sic]." The defense did not object, and the State rested.
The defendant called Deborah Jones, his mother-in-law, as a witness. Ms. Jones testified that she dropped her prescription bottle containing "Xanax Alprazolam" and Soma pills in the defendant's car when the defendant was giving her a ride the evening before he was arrested. Accordingly to Ms. Jones, the defendant dropped her off at her home at approximately 7:00 p.m. She did not realize that her pills were missing until approximately 1:00 or 2:00 a.m. She called the defendant to ask him if she dropped the pill bottle in his car and told him, if so, to get it. Ms. Jones testified that the seized prescription bottle presented in court belonged to her. She testified that she wrote a letter containing an affidavit to prove that the alprazolam and Soma pills belonged to her. She also provided the prescription labels of the original bottles in order to prove that she had a prescription for the drugs. Ms. Jones further testified that both she and her son-inlaw lived in New Orleans at that time.[3] The record reflects that the defendant was *728 arrested in the Cedar Creek Apartment complex in River Ridge in Jefferson Parish at approximately 4:00 a.m.

ASSIGNMENT OF ERROR NUMBER ONE AND PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In these two assignments of error, the defendant claims that the evidence was legally insufficient for the jury to find that the State proved the elements of the crime beyond a reasonable doubt and, therefore, the trial court erred in denying the defendant's motion for a new trial. Specifically, the defendant claims that the State failed to meet its burden to prove criminal intent or that he willingly and "intentionally gained possession or had knowledge of the contents of the pill bottle seized from his pocket. The defendant notes that the evidence presented through the testimony of Ms. Jones showed that the "travel bottle" containing the three Xanax pills along with Soma and other medications belonged to her and had fallen out of her purse into the defendant's car when he was giving her a ride home.
In addition, the defendant notes that Ms. Jones testified that she executed an affidavit to prove that the alprazolam and Soma pills belonged to her and that she had prescriptions for the drugs. The defendant contends that the "plausible story" told to the jury by Jones is more than enough to have created reasonable doubt.
The State claims that based upon the evidence, the jury could have found that the crime was committed beyond a reasonable doubt. The State notes that the alprazolam pills were found in the defendant's pocket, not in his vehicle, approximately two or three hours after Ms. Jones asked defendant to return the pills to her.[4] The defendant was stopped at approximately 4 a.m. in the Cedar Creek apartment complex parking lot in the River Ridge area of Jefferson Parish, which is several miles away from where the defendant and Ms. Jones lived in New Orleans.
LSA-R.S. 40:969(C) states that "it is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule IV unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner." Alprazolam is a Schedule IV controlled dangerous substance. LSA-R.S. 40:964. In order to support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant was in possession of the drug and that he knowingly possessed the drug. Once the State proves that the defendant had possession of the scheduled substance, under LSA-R.S. 40:990[5], the burden then shifts to the *729 defendant to prove the affirmative defense that he possessed the scheduled drug pursuant to a valid prescription. LSA-R.S. 40:990; State v. Lewis, 427 So.2d 835 (La. 1982) (on rehearing); State v. Ducre, 604 So.2d 702 (La.App. 1 Cir.1992). In the present case, the defendant admitted through the stipulation that he was in possession of the alprazolam pills. Accordingly, under LSA-R.S. 40:990, it was then necessary for the defendant to come forward with evidence to prove he was the valid prescription holder or to offer a reasonable, non-criminal explanation as to why he was in possession of the alprazolam pills without a prescription.
A review of the trial transcript indicates that the defendant did not attempt to show that he had a valid prescription for the pills. Instead, as noted above, he presented the testimony of Ms. Jones, who testified that she executed an affidavit to prove that the alprazolam and Soma pills found in the defendant's possession belonged to her and that she had prescriptions for the drugs. Her testimony and affidavit were further offered to provide a non-criminal explanation for the defendant's possession of the alprazolam.
The defendant argues that the State failed to prove that he had the requisite criminal intent, i.e., that he knowingly possessed the illegal drug. The elements of knowledge and intent are states of mind and need not be proven as facts, but may be inferred from the circumstances. State v. Guillard, 98-0504 (La.App. 4 Cir. 4/7/99), 736 So.2d 273. As this Court recently stated in State v. Mosley, 08-1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 709:
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. (Citations omitted.) Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." (Citations omitted.) This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. (Citations omitted.)

Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn. (Citations omitted.) The trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised, and the weight and effect to be given to each permissible inference.
Juries are not required to abandon common sense and life experiences when they enter a jury room. The jury could have reasonably inferred that the defendant had the requisite criminal intent from the fact that he was arrested in an apartment complex parking lot in the River Ridge area of Jefferson Parish, at 4 a.m. in the morning, with the pill bottle containing the pills in question in his pocket.
The defendant's witness, his mother-in-law Ms. Jones, attempted to establish that he was only in possession of the pills while *730 he was attempting to return them her, the alleged valid prescription holder. Under the Jackson standard, a reviewing court does not assess the credibility of witnesses nor reweigh evidence. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events. Rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). The jury heard Ms. Jones's testimony, which it clearly discredited.[6]
Accordingly, viewing the evidence in the light most favorable to the prosecution, the jury could have concluded that the State proved the essential elements of the crime, including guilty knowledge, to find the defendant guilty of possession of alprazolam beyond a reasonable doubt. These assignments of error are accordingly without merit.

ASSIGNMENT OF ERROR NUMBER TWO AND PRO SE ASSIGNMENT OF ERROR NUMBER TWO
In his counseled brief, the defendant also argues that his sentence of five years at hard labor, the maximum provided for this offense, is excessive. The defendant claims in his pro se brief that the trial court failed to consider pursuant to LSA-C.Cr.P. art. 894.1, the mitigating factors of his age of 28 years, his pattern of stability including a wife and family, and his history of no prior felonies.
The Eighth Amendment to the United States Constitution and Louisiana Constitution Article I, § 20 prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Nguyen, 06-969, pp. 5-6 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628.
In sentencing a defendant, a trial court should consider the defendant's personal history, age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence. State v. Crawford, 05-494, p. 6 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669, writ denied 2009-1172 (La.3/12/10, 28 So.3d 1021). LSA-C.Cr.P. art. 894.1(C) requires the trial judge to state for the record the considerations taken into account and the factual basis when imposing the defendant's sentence. When there is an adequate factual basis for the sentence contained in the record, the trial judge's failure to articulate every circumstance listed in LSA-C.Cr.P. art. 894.1 does not require a remand for re-sentencing. State v. Fairley, 02-168, p. 8 (La.App. 5 Cir. 6/26/0), 822 So.2d 812, 817.
In reviewing a sentence for excessiveness, the appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Nguyen, 06-969 at 6, 958 So.2d at 64. In general, maximum sentences are reserved for cases *731 involving the most serious violations of an offense charged and the worst type of offender. State v. Stacker, 02-768, p. 8 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 607, writ denied, 03-0411 (La.10/10/03), 855 So.2d 327. Nevertheless, a trial judge is afforded wide discretion in determining a sentence. An appellate court should further consider three factors in reviewing a judge's sentencing discretion. They are: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
On appeal, the issue is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Napoleon, 01-1222, p. 5 (La.App. 5 Cir. 2/26/02), 811 So.2d 980, 983. An "appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." LSAC.Cr.P. art. 881.4(D). Therefore, a sentence will not be set aside as excessive absent clear abuse of the trial court's broad discretion. State v. Napoleon, 01-1222 at 5, 811 So.2d at 983.
LSA-R.S. 40:969(C)(2) provides in pertinent part that a person convicted of possession of a substance classified in Schedule IV, "shall be imprisoned with or without hard labor for not more than five years and, in addition, may be required to pay a fine of not more than five thousand dollars." Alprazolam is a Schedule IV controlled dangerous substance. LSA-R.S. 40:964.
In the present case, the trial judge sentenced the 28-year-old defendant to the maximum five-year sentence at hard labor without imposing a fine. The record reflects that the trial court adequately articulated the factors considered in imposing the defendant's sentence. The trial judge noted that, on the issues of credibility, the jury found that the defense was based on a falsehood that amounted at best to perjury. In addition, as the defense admitted, the defendant had prior misdemeanor convictions for possession of marijuana. We find that this sentence is neither grossly disproportionate to the severity of the crime nor a needless imposition of pain and suffering in light of the views enunciated by the trial court. Accordingly, these assignments of error are likewise without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
The defendant claims that he was denied due process and did not receive a fair trial because the assistant district attorney, who was motivated by racial discriminatory intent, used a peremptory challenge to strike the only black prospective juror considered for the final empanelled jury.
In order to preserve a complaint that the State used a peremptory challenge based solely on race, the defense must make an objection before the entire jury panel is sworn. State v. Cheatteam, 07-272, p. 9 (La.App. 5 Cir. 5/27/08), 986 So.2d 738, 744 n. 8. In the present case, this issue was not preserved for appeal because the Batson[7] objection was not raised in the district court. Accordingly, this assignment of error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
The defendant requests an errors patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant *732 makes such a request. The review reveals errors patent in this case. The record indicates that there are discrepancies in the commitment/minute entries and the transcripts.
First, the July 26, 2007 commitment and sentencing transcript from defendant's original sentencing are inconsistent. The commitment indicates that the defendant was informed that he had "two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief." However, the July 26, 2007 sentencing transcript indicates that the trial judge informed the defendant that he had "two years within which to file for post conviction relief."
When there is a discrepancy between the transcript and the minutes, the transcript governs. State v. Lynch, 441 So.2d 732, 734 (La.1983). However, the October 18, 2007 commitment from the hearing on defendant's second motion to reconsider sentence indicates that the defendant was informed that he had "two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief."
LSA-C.Cr.P. art. 930.8 does not require a trial court to advise the defendant of the time limitations for filing post-conviction relief more than once. State v. Harris, 01-1380, p. 4 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 390. Therefore, based on the October 18, 2007 commitment, the trial judge properly advised defendant that he had two years from the date his conviction and sentence became final to file an application for post-conviction relief.
Second, the October 18, 2007 commitment indicates that the motion to reconsider was granted, and that the trial court amended the defendant's sentence to add boot camp. However, the October 18, 2007 transcript indicates that the trial court denied the motion to reconsider sentence and therefore did not amend the defendant's sentence to include boot camp.
In the present case, the defense and the State briefs, as well as the defendant's pro se brief, indicate that the trial court amended the defendant's sentence to add boot camp. Nevertheless, when there is a discrepancy between the transcript and the minutes, the transcript governs. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand this case and order the trial court to correct the commitment/minute entry to conform to the transcript. See State v. Hines, 02-397, p. 19 (La.App. 5 Cir. 9/30/02), 829 So.2d 530, 540.

CONCLUSION
For the reasons set forth above, the defendant's conviction and sentence are affirmed. This matter is remanded for correction of the above-noted error patent in accordance with the above instructions.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
EDWARDS, J., dissents with reasons.
EDWARDS, J., dissenting.
I dissent from the majority opinion. To convict a defendant, the State must show criminal intent. No crime can exist without the combination of a criminal act and a criminal intent, or an evil motive, or with a guilty knowledge of its consequences.[8] Criminal intent may be specific or general. Possession of drugs is a general intent crime, the definition of which is set forth in La. R.S. 14:10(2) as follows: "General criminal intent is present whenever there is specific intent, and also when *733 the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." I find the State has utterly failed to prove any rational criminal intent necessary to obtain a conviction.
To find criminal intent, the majority opinion uses the fact that Blazio, a resident of New Orleans, was found in Jefferson Parish at a late hour. The State must prove more than the fact that a man was out late in order for the jury to rationally infer criminal intent. Further, the opinion emphasizes that Blazio's mother-in-law was the alleged holder of the valid prescription, not Blazio. That ignores the point that Blazio never contended he had a valid prescription. He and his mother-in-law always stated that the pills were hers, obtained through a valid prescription, and that they were in a travel pack for convenience.
The majority opinion states, and I agree, that "juries are not required to abandon common sense and life experiences when they enter a jury room." According to common sense and common life experiences, it is often easier to carry prescription medication in a travel pack. Further, it is hardly unusual for one family member to carry medication for another. That, too, in my view, is within the realm of common sense and life experiences. I will not hold that helping an elderly relative constitutes circumstances that indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
I would reverse the conviction.
NOTES
[1] The defendant's appellate counsel filed a brief arguing insufficient evidence to convict and an excessive sentence. The defendant filed a pro se brief also arguing those issues, and additionally arguing a due process violation and a request for an errors patent review.
[2] The minute entry from this hearing indicates that defendant's second motion to reconsider was granted; however, the transcript indicates that it was denied. See error patent review, infra.
[3] Ms. Jones testified that the defendant lived on St. Philip Street in New Orleans, and that she lived on Percy Simpson Court, also in New Orleans. The pharmacy where Ms. Jones filled the prescription was located on Alcee Fortier Boulevard, in eastern New Orleans.
[4] Ms. Jones's testimony was vague as to whether she asked the defendant to return the pills to her immediately or at some other time. In his appellate brief, however, the defendant claims that Ms. Jones asked him to bring the pills back to her and that when he was arrested, he was "just returning them to her not committing a crime."
[5] § 990. Burden of proof; liabilities

A. It shall not be necessary for the state to negate any exemption or exception set forth in this part in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this part, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.
B. In the absence of proof that a person is the duly authorized holder of an appropriate registration or order form issued under this part, he shall be presumed not to be the holder of such registration or form, and the burden of proof shall be upon him to rebut such presumption.
C. No liability shall be imposed by virtue of this Part upon any duly authorized law enforcement officer, the Board of Pharmacy or its employees as provided in R.S. 40:984 engaged in the enforcement of any law, regulation, or municipal ordinance relating to controlled dangerous substances.
[6] See also State v. Craft, 01-248 (La.App. 3 Cir. 10/3/01), 796 So.2d 907, where the trier of fact clearly rejected the testimony of a witness, claiming to be the valid prescription holder of controlled substances found in the defendant's truck, who claimed the defendant was merely bringing her medicine to her.
[7] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[8] State v. Roufa, 241 La. 474, 129 So.2d 743, 746-47 (La.1961).